UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JASON ALLEN OLRICH,

                      Plaintiff,

v.                                         Case No. 18-cv-1982-pp

KENOSHA COUNTY, *et al.*,

                      Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S MOTIONS TO APPOINT COUNSEL (DKT. NOS. 4, 8), GRANTING PLAINTIFF'S MOTION TO STRIKE AMENDED COMPLAINT (DKT. NO. 13), SCREENING CASE**

The plaintiff, an inmate who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. Dkt. No. 1. That complaint consisted of nine typewritten pages. The court received an amended complaint on June 26, 2019, consisting of six handwritten pages accompanied by several attachments. Dkt. Nos. 10, 10-1. This order resolves the plaintiff's motion for leave to proceed without prepayment of the filing fee, dkt. no. 2, grants his motion to strike the amended complaint, dkt. no. 13, and screens the original complaint, dkt. no. 1. It also denies the plaintiff's motions to appoint counsel. Dkt. Nos. 4, 8.

**I.   Motion for Leave to Proceed without Prepaying Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows

a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without prepaying the civil case filing fee if he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On December 18, 2018, the court ordered the plaintiff to pay an initial partial filing fee of $0.71. Dkt. No. 7. The court received that fee on January 2, 2019. The court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.    Motion to Strike and Remove Amended Complaint (Dkt. No. 13)**

The court received the plaintiff's complaint on December 14, 2018. Dkt. No. 1. Four months later, on April 16, 2019, the court received a six-page, handwritten document that was captioned as an amended complaint. Dkt. No. 10. Rule 15 of the Federal Rules of Civil Procedure allow a plaintiff to amend his complaint one time without court permission, as long as he does so within twenty-one days after he serves the complaint (or, if the defendant has answered, within twenty-one days after service of the answer). The plaintiff's complaint hasn't yet been served on the defendant, so he didn't have to ask the court's permission to amend his complaint.

Normally, when a plaintiff files an amended complaint, it "supersedes," or takes the place of, the original complaint. Duda v. Bd. of Educ. of Franklin

Park Public School Dist. No. 84, 133 F.3d 1054, 1057 (7th Cir. 1998). Because of the court's heavy case load, however, it was not able to screen the plaintiff's complaint until now. And after the court received the amended complaint, the plaintiff filed a motion asking the court to strike it. Dkt. No. 13. As far as the court can tell, the plaintiff says that other people advised him that if he didn't file an amended complaint with attachments, certain information would not ever come to light. He since has learned that the information would come out in discovery, but that it would not be appropriate to bring it out before the court had screened his complaint. Id. at 1-2. He asks the court to strike the amended complaint and the exhibits to it. Id. at 2. The court will grant that motion. It has reviewed only the original complaint.

### III.  Screening the Original Complaint (Dkt. No. 1)

The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). For this reason, district courts "screen" complaints filed by self-represented plaintiffs to determine whether the complaints state claims for which a federal court can grant relief.

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that

3

allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that 1) someone deprived him of a right secured by the Constitution or laws of the United States, and 2) that the person who deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

### A. The Plaintiff's Allegations

The complaint alleges that between February 13, 2007 and April 4, 2007, defendants Kenneth Urquhart and Kenneth O. Polzin, Jr. pulled over the plaintiff's white Ford Explorer just off 60th Street in Kenosha, Wisconsin. Dkt No. 1 at 4. (The plaintiff says that Urquhart and Polzin were officers with the Kenosha County Sheriff's Department. Id. 3.) The plaintiff alleges that he complied and pulled over; his car doors were locked. Id. at 4. He says that Urquhart came up to the plaintiff's door and tried to pull it open, but the door was locked. Id. The plaintiff explains that he cracked his window and asked Urquhart what he wanted, and Urquhart told the plaintiff that he was under arrest for delivery of cocaine. Id. Urquhart instructed the plaintiff to step out of the car. Id. The plaintiff says that as soon as he stepped out of his vehicle,

4

Urquhart handcuffed him and put him in the back of the undercover car. Id. The plaintiff asserts that Polzin "stole" his car, and took it to 1000 55th Street in Kenosha, the location of the Kenosha County Sheriff's Department. Id. The plaintiff indicates that Urquhart drove behind Polzin. Id.

Once they arrived at the sheriff's department, Urquhart and Polzin took the plaintiff to an interrogation room. Id. at 5. The plaintiff says that he immediately asked to be allowed a phone call and asked for a lawyer. Id. The defendants told him that he was a "piece of shit" and that he would not be getting a lawyer. Id. The plaintiff says he demanded a phone call and a lawyer a second time, and the defendants denied his request again. Id. The plaintiff alleges that Urquhart then squeezed the plaintiff's shoulder and twisted his skin to get him to talk. Id. The plaintiff says that Urquhart threatened him, telling the plaintiff that he wouldn't be let go or get his car back if he didn't work as a confidential informant. Id. He asserts that because the defendants wouldn't get him a lawyer, the plaintiff said he would work for them and signed a contract to become a confidential informant. Id. The plaintiff indicates that Urquhart let him go and gave him his car. Id.

The plaintiff alleges that later, when Urquhart couldn't contact the plaintiff—because the plaintiff did not want to work as a confidential informant—Urquhart staked out the plaintiff's house and arrested him when he pulled out of his driveway. Id. The plaintiff says that Urquhart took him to jail and again denied the plaintiff an attorney and a phone call. Id. at 6. The plaintiff indicates that when he did finally speak to a public defender, the

attorney told the plaintiff there was nothing the attorney could do because Urquhart and Polzin denied arresting him, taking his car and interrogating him. Id.

The plaintiff says that at his "preliminary hearing"—presumably he was charged in state court—Urquhart told the judge that the plaintiff had confessed to the crime and that the plaintiff was getting "too good of a plea deal." Id. The plaintiff wonders how Urquhart could say that he confessed if Urquhart denied that he'd ever questioned the plaintiff. Id. The plaintiff says that he let the officers' treatment of him go, until he received discovery with respect to the prosecution's motion to include other acts evidence in its case—a police report stating that Urquhart spoke to the plaintiff at the sheriff's department on April 4, 2007. Id. The plaintiff asserts that it was during this interview that he asked for a phone call and a lawyer. Id. The plaintiff says that when he contacted the sheriff's department asking for tapes of the interrogation, he was told there were none pertaining to the case he referenced. Id.

On page 2 of the complaint, the plaintiff provided a list of alleged constitutional provisions and laws he claims this behavior violated, including the Fourth (Miranda violation), Fifth (self-incrimination violation), Sixth, Eighth (including cruel and unusual punishment and excessive force) and Fourteenth Amendments (including violations of substantive and procedural due process protections), and claims of unlawful arrest, coercion, defamation, withholding evidence and lying under oath. Id. at 2.

6

As relief, the plaintiff asks that the charges against him be expunged and deleted from his records, that the officers be disciplined, that the officers be "retrained," that "each interrogation be stored in a central storage facility," that he receive $20,000,000 in compensatory damages and $20,000,000 in punitive damages, that the defendants pay "taxes on all money to him, if settled or otherwise," that the defendants pay his attorneys' fees (if the court appoints an attorney for him), that he be reimbursed for all costs and fees and that he be compensated for his time doing research and preparing pleadings and briefs. Id. at 8-9.

B.      The Court's Analysis

The events the plaintiff describes in the complaint took place over three months in 2007. The court received his complaint on December 14, 2018—over eleven years later. Section 1983 does not contain a statute of limitations. Malone v. Corr. Corp. of America, 553 F.3d 540, 542 (7th Cir. 2009). Federal courts apply the limitations periods used for personal injury cases in the state in which the alleged injury occurred. Id. (citing Wilson v. Garcia, 471 U.S. 261 (1985)). At the time of the events the plaintiff describes in the complaint, Wis. Stat. Ann. §893.53 required a plaintiff to sue within six years after the cause of action accrued. See, e.g., Gray v. Lacke, 885 F.2d 399, 409 (7th Cir. 1989). As of April 5, 2018—eight months before the plaintiff filed his federal lawsuit—the statute of limitations was three years. Wis. Stat. Ann. §893.53. A §1983 claim that a state actor violated a plaintiff's civil rights accrues "when the plaintiff has a complete and present cause of action." Wallace v. Kato, 549 U.S. 384,

7

388 (2007). The limitations period starts to run either when the plaintiff discovers his injury or when he should have discovered it with "reasonable diligence." Hanson v. A.H. Robins, Inc., 113 Wis. 2d 550, 556 (Wis. 1983).

The plaintiff's claims "accrued" in 2007, because he knew of his injuries when they happened. Even assuming that the plaintiff had to fully complete the criminal case before he could sue in federal court, the Wisconsin Circuit Court Access Program shows that the case ended on December 5, 2007 when the state court denied the plaintiff's motion to modify his sentence and he didn't appeal. Under either the six-year statute of limitations that applied between 2007 and April 2018 or the three-year statute that has applied since then, the plaintiff's complaint is time-barred. He waited too long—by five years or by eight years, depending on which version of the statute of limitations applied—to file his federal case.

Though the statute of limitations is an affirmative defense—meaning that defendants can raise it to defend against the claims against them—a court can invoke an affirmative defense at screening "if it is clear from the complaint that the defense applies." Goree v. Serio, 735 Fed. Appx. 894, 895 (7th Cir. 2018) (citing Khan v. United States, 808 F.3d 1169, 1172 (7th Cir. 2015)). Here, it is clear that the defense applies. The plaintiff's case is time-barred, and the court will dismiss it.

### IV. Motions to Appoint Counsel (Dkt. Nos. 4, 8)

When he filed his complaint, the plaintiff filed a motion asking the court to appoint a lawyer to represent him. Dkt. No. 4. He said he could not afford a

8

lawyer, that the case was complex, that he had limited access to the law library and that he had limited legal knowledge. Id. Four months later, he filed an amended motion to appoint counsel. Dkt. No. 8. This motion added details about the plaintiff's mental illnesses.

Because the court must dismiss the plaintiff's claims as barred under the statute of limitations, the court will deny the plaintiff's motions to appoint counsel.

**V.  Conclusion**

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **DENIES** the plaintiff's motion to appoint counsel. Dkt. No. 4.

The court **DENIES** the plaintiff's amended motion to appoint counsel. Dkt. No. 8.

The court **GRANTS** the plaintiff's motion to strike the amended complaint. Dkt. No. 13.

The court **FINDS** that the plaintiff's original complaint fails to state a claim for which this court can grant relief, because it is barred by the statute of limitations. Dkt. No. 1.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g) and will enter judgment accordingly.

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the $348.66 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state, or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of Oshkosh Correctional Institution and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under

Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment.  The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 30th day of July, 2019.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**